UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| COMMUNICATION SERVICE FOR THE DEAF, INC.,<br><br>Plaintiff,<br><br>- vs -<br><br>FIRST ADMINISTRATORS, INC., RMTS, L.L.C., and GERBER LIFE INSURANCE COMPANY,<br><br>Defendants. | CIV. 10-4134<br><br>**AMENDED COMPLAINT** |

For its Complaint against the Defendants, the Plaintiff states as follows:

1. Plaintiff Communication Service for the Deaf, Inc. ("CSD") is a non-profit corporation organized under the laws of South Dakota with its principal place of business at 102 North Krohn, Sioux Falls, SD.

2. Defendant First Administrators, Inc. ("FAI") is an Iowa corporation with its principal place of business at 636 Grand Avenue, Station 32, Des Moines, IA, 50309. Its registered agent in South Dakota is CT Corporation, 319 S. Coteau Street, Pierre, South Dakota, 57501.

3. Defendant RMTS, LLC is a New York limited liability company with its principal place of business at 6 Harrison St., New York, New York 10013. RMTS is registered to do business in South Dakota, and its registered agent is Person Enterprises, LLC, 326 N. Madison, Pierre, SD 57501.

4. Defendant Gerber Life Insurance Company ("Gerber") is registered with the South Dakota Division of Insurance; its registered agent, therefore, is Merle Scheiber, Director,

Division of Insurance, 445 E. Capitol, Pierre, SD 57501. Gerber's principal place of business is at 1311 Mamaroneck Ave., White Plains, NY 10605.

5. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332; the amount in controversy exceeds $75,000.00.

6. At all times material to this Complaint, RMTS was the managing general underwriter for Gerber Life Insurance Company and adjudicated claims submitted by Plaintiff.

7. From 2004 to 2008, CSD established an a self-funded health insurance plan, for its employees.

8. Defendant FAI entered into an April 1, 2004, Benefit Services Administration Agreement for the Communication Service for the Deaf, Inc. Healthcare Plan, ("Agreement") a copy of which is attached to this Complaint as Exhibit A and incorporated herein as though set out in full. By this Agreement, FAI agreed to act as the Benefit Services Administrator for Plaintiff's employee benefit plan.

9. Pursuant to the Agreement, Exhibit A, FAI specifically undertook the duties described at pages 4-7 of the Agreement, Exhibit A. Section 1(i) of the Benefit Services Agreement, Ex. A, defines "Covered Dependent;" in this Amended Complaint the Covered Dependent at issue will be referred to as the "Dependent." Section 1(j) of the Agreement defines "Covered Employee;" in this Amended Complaint the Covered Employees at issue will be referred to as "Employee."

10. FAI negotiated and completed an application with Defendants RMTS and Gerber for stop loss insurance coverage for Plaintiff's employees and agreed on Plaintiff's behalf to enter into an insurance contract providing a policy of excess loss insurance with Gerber. Gerber approved the application and provided a policy of insurance to Plaintiff. . A copy of the policy

of insurance with Gerber, effective October 1, 2007 to September 30, 2008, is attached as Ex. B. A successor policy, with substantially the same terms, was issued by Gerber to CSD, effective October 1, 2008. FAI was aware of the cancelation provisions and requirements for submitting claims to RMTS and Gerber and acted as Plaintiff's agent for that purpose.

## FIRST CAUSE OF ACTION:
## BREACH OF CONTRACT BY FAI

11. Paragraphs 1 to 10 are incorporated by this reference as though set out in full.

12. FAI failed to properly complete Standard Stop Loss Disclosure Forms, failed to submit the required disclosure information to RMTS, and Gerber, including those employees/dependents who had received medical services exceeding $30,000 during the 12 months previous to the September, 2007 application, failed to properly process claims with the stop loss insurance carrier, failed to meet deadlines for the submission of claims, and failed to keep Plaintiff properly informed about cancelation provisions and the status of claims, each of which constituted a breach by FAI of its Agreement with Plaintiff. FAI thereby failed to use reasonable diligence and that degree of skill and judgment possessed by one experienced in furnishing claim administration services to plans of similar size and characteristics of the CSD Plan, as required by Section 15(f) of Benefit Services Administration Agreement.

13. Section 3(a) required FAI to process received claims in accordance with the Benefit Plan Document. Section 3(b) required FAI to refer to CSD controversial or questionable claims and to provide an analysis to assist CSD in making a decision about such claims. Section 3(j) required FAI to coordinate and arrange case management services with medical review organizations. Section 3(w) of the Agreement required FAI to "submit specific and aggregate claims…to the stop loss or excess liability insurance company." FAI failed to comply with each contractual provisions regarding the late-2008 claims at Fairview Hospital and St. Joseph's

3

Hospital for the two covered Employees. FAI knew or should have known that the hospital bills for treatment of insured Employees of Plaintiff at Fairview Hospital and St. Joseph's Hospital had to be paid within the coverage period, that the benefit period was ending on December 31, 2008, and that action had to be taken to effectuate payment before the end of the benefit period. FAI failed to take the necessary action on a timely basis, which was a further breach of Sections 3(a), (b), (j), and (w) of the Agreement.

14. Section 3(q) required FAI, when requested by CSD or the stop loss or excess liability carrier to:

> Coordinate the auditing of selected participating provider bills over threshold amount with medical review organizations to assure the submitted charges are accurately reported and considered under the Benefit Plan.

Section 3(8) required FAI to "prepare and provide" to CSD "an eligibility list showing Covered Employees and Covered Dependents" as well as other information. FAI failed to comply with these contractual obligations regarding the Dependent from Lubbock, TX. If FAI had properly conducted these functions, the Dependent would have been identified, analyzed and/or qualified at an earlier date, thereby reducing or eliminating the medical charges now improved on CSD, due to the denial of this claim by RMTS and Gerber.

15. As a direct and proximate result of those breaches of contract by FAI, Plaintiff was damaged by claims not being covered by insurance in the following amounts:

> Dependent, Lubbock TX       $140,551.00
>
> Employee, St. Joseph's Hospital and Health Center
> Syracuse, NY                 $272,668.00
>
> Employee, Fairview Hospital
> Fairview MN                  $156,122.36

## SECOND CAUSE OF ACTION:
## NEGLIGENCE BY FAI

4

16. Paragraphs 1 to 15 are incorporated by this reference as though set out in full.

17. Section 3 of the Agreement defined the services to be provided to CSD by FAI, as the Benefit services Administrator, and stated that FAI "shall, except as otherwise provided in this Agreement, have no duty or obligation to perform any other act or service." FAI nevertheless, voluntarily undertook additional duties to CSD. Section 3(x) of the Agreement stated:

> Benefit Services Administrator will attempt, upon authorization from the Plan Sponsor, to arrange for the purchase of policies of stop-loss or excess liability insurance. The premiums for any insurance purchased will be paid by the Plan Sponsor. In no event will Benefit Services Administrator be liable for failure to place any type of insurance policy on behalf of the Plan Sponsor;

Despite this provision, FAI undertook the duty of placing and obtaining for CSD stop loss and excess liability insurance for the years October 1, 207 to September 30, 2008, and October 1, 2008 to September 30, 2009. In addition, FAI undertook the duty of preparing and submitting to RMTS the appropriate application documents according to the specifications improved by RMTS, including but not limited to the Standard Stop Loss Disclosure Forms.

18. By agreeing to act as Plaintiff's insurance agent, FAI undertook a duty owed to Plaintiff to conduct itself consistent with the standards in the insurance agency and claim administration industries and professions, to protect the Plaintiff from injury, and to provide insurance of the kind and with the provisions specified by the Plaintiff.

19. FAI breached these duties and was therefore negligent, because FAI:

    a. Failed to provide Plaintiff with adequate stop loss insurance coverage;

    b. Failed to properly complete standard stop loss disclosures forms and process claims with the insurance policy which was provided;

5

    c. Failed to properly inform Plaintiff of contract cancelation provisions and the status of claims;

    d. Failed to meet mandatory deadlines for the processing of claims;

    e. Failed to notify stop loss carrier of plan changes; and

    f. Failed to submit the required disclosure information to RMTS, and Gerber, including those employees/dependents who had received medical services exceeding $30,000 during the 12 months previous to the September, 2007 application.

    g. Failing to take the necessary action to ensure that the Employees' claims described in paragraph 13 were timely paid and therefore covered by the insurance policy.

20. As a direct and proximate result of FAI's negligence, Plaintiff was damaged by claims not being covered by insurance in the following amounts:

| | |
|---|---|
| Dependent, Lubbock TX | $140,551.00 |
| Employee, St. Joseph's Hospital and Health Center Syracuse, NY | $272,668.00 |
| Employee, Fairview Hospital Fairview MN | $156,122.36 |

## THIRD CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY BY FAI

21. Paragraphs 1 to 20 are incorporated by this reference as though set out in full.

22. FAI owed a fiduciary duty to Plaintiff because Plaintiff reposed its confidence and trust in FAI to act as its benefits services administrator, and insurance agent and to submit to RMTS the required application documentation. Between Plaintiff and FAI there existed an

inequality of knowledge in favor of FAI, a dependence by Plaintiff on FAI arising from the greater business intelligence by FAI regarding insurance, and employee benefits, and FAI's superior knowledge of the facts and other conditions, all of which gave rise to a fiduciary duty owed by FAI to Plaintiff.

23. FAI breached its fiduciary duty to Plaintiff by:

a. Failing to obtain for Plaintiff with adequate stop loss and excess insurance coverage;

b. Failing to properly complete standard stop loss disclosures forms and process claims with the insurance policy which was obtained;

c. Failing to properly inform Plaintiff of contract cancelation provisions and the status of claims;

d. Failing to meet mandatory deadlines for the processing of claims;

e. Failing to notify stop loss carrier of plan changes; and

f. Failing to submit the required disclosure information to RMTS and Gerber, including those employees/dependents who had received medical services exceeding $30,000 during the 12 months previous to the September, 2007 application.

g. Failing to take the necessary action to ensure that the Employees' claims described in paragraph 13 were timely paid and therefore covered by the insurance policy.

24. As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff was damaged by claims not being covered by insurance in the following amounts:

        Dependent, Lubbock, TX    $140,551.00

        Employee, St. Joseph's Hospital and Health Center
        Syracuse, NY    $272,668.00

        Employee, Fairview Hospital
        Fairview, MN                  $156,122.36

## FOURTH CAUSE OF ACTION:
## BREACH OF CONTRACT BY RMTS

25

26.    Paragraphs 1-24 are reallgeged as though set out in full.

27.    RMTS holds itself out as one of the largest Managing General Underwriters of medical stop loss, group life and AD&D coverage in the United States, and one of the few remaining privately owned MGUs in the country. It represents that it works with some of the nation's largest, most prestigious insurance companies, and that its independence and ability to make all underwriting and claims decisions on business placed with it sets it apart from the competition.

28.    RMTS submitted to Plaintiff a September 6, 2007 Stop Loss Insurance Proposal. This Proposal became part of a contract between RMTS and Plaintiff; the contract also consists of the applicant documents prepared by FAI and submitted to RMTS. The Proposal, at p. 2 stated "should we learn at any time during the policy year that the information provided to us during the underwriting of this insurance risk was incomplete or inaccurate or the above assumptions are incorrect, we may rescind or reunderwrite this offer or the stop loss policy." RMTS also agreed to ask for additional information within 10 business days of its receipt of the Completed and Signed Disclosure Statement:

> Completed and Signed Disclosure Statement, executed by the Plan Sponsor and/or TPA representative. Upon receipt of same, we will make a determination within ten (10) business days from receipt of the Statement as to whether a Separate Individual Retention Level(s) will apply, or whether additional information is needed. See Disclosure Statement for a complete description of requirements and conditions. Please note that previously or subsequently submitted documentation (e.g. a 50%

notice") will not satisfy underwriting disclosure requirements unless you receive written notice from us to the contrary.

The Disclosure statement was also specifically made part of the Application, and is attached hereto as Ex. C, except the Utilization Activity Report and APS Report are not attached because they contain private medical information about named individuals. This contract also includes the statement "disabled Persons will be covered only if disclosed on the Disclosure Statement." When RMTS received the application and disclosure statement, it should have requested additional information, but failed to do so.

29. The Application, states that the Specific Deductible (Spec) was $110,000.00. CSD was to disclose if any insureds had received treatment expense equal to "50% of spec" or $30,000, whichever is less, as specified in the Standard Stop Loss Disclosure Form, Instructions for Completion. The Large Claim Summary only addressed 50% of spec, i.e. $55,000, not the $30,000 threshold. This was obvious from the heading on the summary, and from examining the 14 cases described in the 4-page summary. RMTS had a contractual obligation to notify CSD that it failed to also disclose the more-than-$30,000 cases. If it had complied with its contractual obligations, RMTS would have discovered the Dependent's claim already in excess of $30,000, but less than 50% of spec. This failure results in a waiver of the RMTS right to deny the claim by RMTS and Gerber. RMTS breached the contract by not requesting the information it needed for underwriting, and by not actively engaging in underwriting until after the Dependent's claim was made.

30. The application submitted to RMTS included a document entitled APS Report which identified the Dependent, not by name, but by number (#1929); if RMTS had properly conducted its underwriting function, and complied with its contractual obligations, it would have observed that number 1929 already had $31,458.09 in medical claims, as of September 6, 2007.

9

31. An additional RMTS breach resulted from its application of the term "disabled" to the Dependent. The policy by RMTS states "we do not pay for disabled members unless disclosed." The Application includes the admonition that "Disabled Persons will be covered only if disclosed on the Disclosure Statement". Disabled in the policy does not necessarily mean the same as disabled under Medicare rules. RMTS assumed that the Dependent was disabled because he had Medicare Part A. The RMTS November 6, 2008 letter of denial, referred to the Dependent's 2001 amputation. An amputation does not automatically meet the policy definition of a dependent "unable to perform his or her normal functions of a person of like sex and age."

32. As a direct and proximate result of the breach of contract by RMTS, Plaintiff was damaged in the amount of $140,551.00.

## FIFTH CAUSE OF ACTION:
## BREACH OF CONTRACT BY GERBER

33. Paragraphs 1 - 29 are realleged as though set out in full.

34. The insurance contract, Ex. B, obligated Gerber to pay the claims arising from the Dependent's case.

35. Gerber is bound by the actions of its agent and underwriter, RMTS. The failure by RMTS to properly handle underwriting and claims administration is not a proper or legal basis for Gerber to denial of claims.

36. The underwriting failures by RMTS, described in paragraphs 25-28, above, do not absolve Gerber of its contractual obligations to Plaintiff under the insurance policy, Exs. B and C, and it successor policy.

37. Gerber collected and retained the insurance premiums for the period October 1, 2007, through December 31, 2008, so Gerber should be estopped from denying coverage for the Dependent's medical care.

38.     Gerber's refusal to pay for the Dependent's claims is a breach of its insurance contracts with Plaintiff. That breach has damaged Plaintiff in the amount of 140,551.00.     39.

Plaintiff is entitled to prejudgment interest at the rate of 10% per annum from November 1, 2007, until the date of judgment.

40.     The acts and omissions of FAI described in this Amended Complaint constitute, in the aggregate, a failure on the part of FAI to perform its claim administration obligations under the Benefit Services Administration Agreement in accordance with the standards set forth in said Agreement, thereby entitling Plaintiff to be reimbursed for its reasonable attorneys fees and court costs pursuant to Section 15(f) of the Benefit Services Agreement.

41.     The refusal by RMTS and Gerber to properly adjudicate and make payment on the Defendant's claim was vexatious and without reasonable cause, thereby entitling Plaintiff to an award of attorneys fees and costs, purchase to SDCL 58-12-3.

WHEREFORE, Plaintiff prays for a judgment in favor of Plaintiff and against FAI in an amount not less than $569,341.36, for compensatory damages, for an award of prejudgment interest on those compensatory damages, for Plaintiff's attorneys and costs, and for whatever additional relief the Court deems just and equitable.

Plaintiff prays for a judgment in favor of Plaintiff and against RMTS and Gerber in an amount not less than $140,551 for compensatory damages, for an award of prejudgment interest on said damages, for an award of Plaintiffs attorneys fees and costs, and for whatever additional relief the court deems just and equitable.

Dated this 4th day of April, 2011, at Sioux Falls, South Dakota.

HAGEN, WILKA & ARCHER, LLP

By /s/ Thomas K. Wilka

Thomas K. Wilka
600 S. Main Avenue, Suite 102
P.O. Box 964
Sioux Falls, SD 57101-0964
(605)334-0005
Attorneys for Plaintiff

12